**In re James Cy MOURADICK, Debtor.**

**Bankruptcy No. 187–03974B–11F.**

United States Bankruptcy Court,
E.D. California,
Fresno Division.

March 8, 1993.

Glenn A. Dryfoos, Greenberg, Glusker, Fields, Claman & Machtinger, Los Angeles, CA, for debtor.

Jeffrey Lodge, Fresno, CA, for U.S. Trustee.

Steven Jackson, pro se.

## MEMORANDUM DECISION ON APPLICATION FOR ACCOUNTANT FEES

BRETT J. DORIAN, Bankruptcy Judge.

The application of Irwin–Jackson & Co., an accountancy corporation, ("applicant") for a final allowance of fees and expenses for services rendered as accountant for the debtor-in-possession came on regularly for hearing on December 16, 1992. The Office of the United States Trustee objected on three grounds: that the request included $3,500.00 for services not yet performed (preparation of final tax returns), that there were excessive charges for preparation of the application, and that charges were included for services performed for an entity—Mouradick–Kalashian Agriculture ("MKA")—other than the debtor. (The last ground had also been raised in connection with the applicant's prior, interim fee request.) In addition, the court questions charges in connection with the filing of a proof of claim.

For the reasons set forth below, the present fee request will be reduced by $7,723.50.

Applicant filed its initial fee application on May 6, 1991, with a hearing set for May 28, 1991. As proper notice of the hearing had not been given, the matter was dropped from calendar. Rather than re-noticing the application, a second application was filed by applicant on May 31, 1991. With the exception of a different hearing date in the caption, the second application was identical in every respect to the first.

The application filed May 31, 1991, came on for hearing on June 24, 1991, together with an objection by the United States Trustee that $628.50 in fees and $7.85 in expenses was being requested for work performed on behalf of MKA. Upon the representation that the work done for MKA was integral to the debtor's reorganization, and in the absence of any other objection, the application, submitted as an interim one for $17,017.86, was approved.

 While the services of attorneys employed on behalf of the bankruptcy estate in preparing and presenting fee applications are entitled to compensation in the Ninth Circuit (*In re Nucorp Energy*, 764 F.2d 655 (9th Cir.1985)) and presumably those of other professionals as well, the standard to be applied in reviewing such services is the "necessary and reasonable" requirement of 11 U.S.C. § 330(a)(1). *Nucorp* does not, however, give *carte blanche* for everything done in connection with a fee application. *In re Riverside–Linden Inv. Co.*, 111 B.R. 298, 301 (9th Cir. BAP 1990).

### Charges in Connection with the Fee Applications

 The court has identified forty-four entries related to the fee applications totalling 77.8 hours and $4,918.50. The narrative portions of the applications note that time records are maintained in tenths of an hour (which satisfies the court's requirements), transcribed into storage in the firm's computer and then collected to generate a bill.

The applications note that the information generated by the computer had to be re-formatted for presentation to the court.[1] The forty-four entries in question lack suf-

---

1. This court requires that fee applications be presented in a single chronological document as opposed to being presented with a number of monthly invoices which contain so much extraneous material that it is impossible to isolate out and analyze the services rendered.

ficient detail to reveal precisely what was done with regard to the fee application. But with the exception of the narrative portions of the application and supporting declaration and the notice of hearing, which combined total approximately five full pages, the supporting schedules should have required at most some minimum clerical effort to transcribe the computer-generated information into the chronological format required by the court.

Especially troubling in the final application are eleven entries totalling 14 hours and $642.00 between May 6, 1991, when the first, improperly noticed application was filed, and May 31, 1991, when the application was [needlessly] re-filed. As noted previously, the application and supporting papers were identical in both filings and should have required no additional work. The only additional preparation required was a notice of hearing and service of the notice.[2]

The narrative portions of the three documents comprising the final application totalled slightly over five pages and were essentially the same in content as the documents filed for the prior applications. These documents should have required even less time, but there are at least eighteen entries totalling 33.6 hours and $1,581.50 for preparation of this final application.

■ It is also noted that the final application contains charges for appearances by two employees of the firm totalling 3.4 hours and $229.50 at the June 24, 1992, hearing. While it may be appropriate for counsel to appear at a fee hearing, the court finds no reason to allow parties who are not authorized to practice before the court to charge for court appearances, especially when the party on whose behalf the appearance is made, as here, is a corporation and can only appear through counsel.

Of the $4,918.50 in charges identified by the court in the present and prior fee appli-

cations for their preparation, $500.00 will be allowed for services in connection with the initial application and $350.00 will be allowed for services in connection with the final application, amounts which in the court's view are possibly even excessive.

### Preparation of the MKA Tax Returns

■ The United States Trustee has properly questioned fees requested for preparation of tax returns for MKA. The court has identified $556.20 in charges under the two fee applications for the questioned services. The debtor and another debtor, Richard Kalashian, whose Chapter 11 proceeding is also pending before this court, are the two principals of MKA. The bulk of the funds in the two estates arises from court settlements in excess of one million dollars, all of which was paid over in equal shares to the estates of the individual debtors, despite the fact that MKA itself had a substantial claim in the litigation.

The charges will be allowed because the liabilities of the debtors are presumably affected by the tax obligations arising from MKA, the applicant has not duplicated its claim for the MKA work in the related Chapter 11 proceeding, the result to creditors is essentially unaffected (the major claims in each estate being identical), no objections were raised by the creditors' committee or any individual creditor, and the amount at issue is relatively very small.

### Charges for Final Tax Returns

■ $3,500.00 has been requested for preparation of final estate tax returns. While it may be appropriate to award a fee for some final minor service a professional must perform requiring at most a few hours of work, the sum requested would not appear to fall within that narrow exception. Accordingly, without prejudice to applicant's right to seek a supplemental award for future services (which may conceivably exceed the amount requested), the

---

**2.** The court questions the propriety of and the need for nonprofessionals to prepare, file and serve such notices. More properly such services should be performed by counsel and in this case could have been done by the attorney for the debtor in a single combined notice which set a hearing on all pending professional fee applications.

charge will not be allowed in connection with this application.

### *Charges for Filing a Proof of Claim*

■ The sum of $155.00 has been requested for 2.2 hours of services on June 6, 1992, in connection with the filing of an administrative proof of claim. 11 U.S.C. § 503 establishes and requires a notice and hearing procedure for administrative claims that is different from the procedure for the presentation of claims by pre-petition creditors. Accordingly, the filing of a proof of claim where an application for fees has been filed is duplicative and unnecessary. The charge, accordingly, will not be allowed.

To make the adjustments required by the foregoing, $4,068.50 will be deducted from the present application for excessive charges for the preparation of the applications, $155.00 will be deducted for charges in the preparation and submission of claims for administrative services, and $3,500.00 will be deducted for the future preparation of the final tax returns.

As the sum of the adjustments totals $7,723.50, $5,763.30 will be awarded for fees and $437.55 for reimbursement of costs pursuant to the present application. Total fees and costs awarded, therefore, under the two applications heard by the court are $23,781.16 for fees and $437.55[3] for reimbursement of costs.

A separate order will issue.

---

**3.** In its initial application, applicant failed to separately total fees and reimbursable costs. Thus, costs requested in that application are included in fees.